UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROGER BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Cause No. 1:09-cv-1370-WTL-TAB |
| | ) | |
| HONEYWELL TECHNOLOGY SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## ENTRY ON MOTION TO DISMISS

Before the Court is a Motion to Dismiss (Docket No. 9) filed by the Defendant, Honeywell Technology Solutions, Inc. ("Honeywell"). This motion is fully briefed, and the Court, being duly advised, now **GRANTS** the motion for the reasons set forth below.

## I.  RULE 12(b)(6) STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and there is no need for detailed factual allegations. However, the statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat. Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## II.  BACKGROUND

The Plaintiff, Roger Bell, began working for Honeywell on October 21, 2007, as an

associate engineer/mechanic.  Bell performed his job well and received satisfactory or better evaluations from his superiors.

On November 11, 2007, Bell arrived at his work site in Kuwait.  Prior to Bell's arrival, his new supervisor, Linda Beck, made a comment betting that "the next mechanic to arrive would be a 'nigger.'" Compl. ¶ 10.  When Bell, who is black, arrived, Beck "complained and stated 'how many more niggers she had to work with on this project.'" *Id*. ¶ 12.

Beck assigned Bell undesirable work.  Ultimately, Bell complained to site supervisor Frank Murchison and to both the outgoing and incoming program managers.  Bell also filed a formal grievance regarding Beck's conduct.

After complaining about Beck's conduct, Bell was "forced to relocate" to another area. *Id*. ¶ 17.  Following his relocation "he was written up for being in the wrong location" even though "he was ordered to be in the particular location by his superior." *Id*. ¶ 18.  Bell's work conditions continued to deteriorate.  "[H]e would show up for meetings to find out that the meetings had been cancelled" and he was isolated from other workers. *Id*. ¶¶ 19-20.

Bell ultimately filed a complaint alleging racially motivated harassment and retaliation in violation of 42 U.S.C. § 1981.[1]  Honeywell has now moved to dismiss Bell's complaint under FED. R. CIV. P. 12(b)(3) and FED. R. CIV. P. 12(b)(6).

### III.  DISCUSSION

Honeywell's primary argument in favor of dismissal is that Bell's "attempt to state a

---

[1] Although Bell's complaint mentions Title VII, he has not brought any claims under this statute.  *See* Compl. ¶ 1 (stating this suit is "authorized and instituted pursuant to . . . Title VII"); Docket No. 15 at 6 (noting that "Plaintiff mentions Title VII but makes not [sic] claims under Title VII.  Thus Title VII has no bearing on this case.").  Accordingly, as Bell himself makes clear, his only causes of action are under § 1981.

claim under Section 1981 fails because the alleged wrongful conduct occurred outside the United States [and] Section 1981 does not apply extraterritorially." Docket No. 10 at 1.

Section 1981(a) states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To determine whether Bell has raised valid arguments under § 1981, the Court must determine whether this section applies to conduct that occurred outside of the United States. There are no published Seventh Circuit decisions addressing this issue. However, there is a persuasive decision from the Second Circuit Court of Appeals, *Ofori-Tenkorang v. American International Group, Inc.*, 460 F.3d 296 (2d Cir. 2006).

The Plaintiff in *Ofori-Tenkorang* worked in South Africa. *Id*. at 299. At his workplace he was allegedly

> subjected to greater scrutiny than his white colleagues when attempting to obtain reimbursement for business-related expenses, blamed for poor business performance that was unrelated to his work, threatened with termination after only a single poor performance review, given a smaller bonus than similarly-situated colleagues, wrongfully accused of stealing funds . . . , improperly suspended from work, and required to provide more documentation than his white colleagues to justify his request for medical leave.

*Id*. Ofori-Tenkorang filed suit under § 1981 and the United States District Court for the Southern District of New York dismissed his claims with prejudice. *Id*. at 300.

The Second Circuit began its analysis by noting that "Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." *Id*. at 301 (citing *Small v. United States*, 544 U.S. 385, 388-89 (2005)). To determine whether Congress intended a statute to have

3

extraterritorial application the Court looks "'to see whether language in [the relevant Act] gives any indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control.'" *Id*. (quoting *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)).

Having laid out the standard, the Second Circuit noted that "[t]he plain text of Section 1981 manifests Congress's intent to confer on 'persons *within* the jurisdiction of the United States . . . the same [enumerated] right[s] in every *State* and *Territory*.'" *Id*. (quoting 42 U.S.C. § 1981(a)). The Court continued, "[f]ar from evincing any intent on the part of Congress to 'apply [the] statute beyond our borders,' the 'language' of Section 1981 unambiguously confirms the opposite." *Id*. (quoting *United States v. Gatlin*, 216 F.3d 207, 211 (2d Cir. 2000)). "Moreover, nothing in the structure or history of Section 1981 suggests that Congress intended the statute to reach discrimination against individuals outside the territorial jurisdiction of the United States." *Id*. The court emphasized that "Section 1981 limits its application to persons within U.S. territory. The statute not only restricts coverage to conduct taking place in our 'State[s]' or "Territor[ies],' but also confines the availability of its protections to 'persons within the jurisdiction of the United States.'" *Id.* at 302 (quoting 42 U.S.C. § 1981(a)). After noting that all courts to address this issue have "unanimously agreed that the statute does not apply outside the Untied States," *id.* at 302, the Second Circuit affirmed the district court's dismissal of the claims involving discrimination in South Africa. *See id*. 305-06.

In the instant case, Bell's claims are based entirely on conduct that occurred while he was stationed in Kuwait. Nowhere in either the Complaint or in response to the Defendant's motion to dismiss does Bell allege that any harassment or retaliation occurred while he was in the United

4

States.  Indeed, Bell's only argument is that § 1981 should be applied extraterritorially because "[a]ll persons within the jurisdiction of the United States mean [sic] more than all persons within the territorial boundaries of the United States." Docket No. 15 at 3.  Unfortunately, Bell's argument ignores the "in every state and territory" language of § 1981, which indicates that the statute does not apply extraterritorially.  In addition, Bell fails to acknowledge that when Congress decides to extend the application of civil rights statutes to cover extraterritorial conduct, Congress does so through explicit legislative amendments.  Thus, Title VII, the Americans with Disabilities Act, and the Age Discrimination in Employment Act have all be amended to apply to conduct occurring outside of the United States.  *See Ofori-Tenkorang*, 460 F.3d at 302-03.  No such action has been taken with respect to § 1981.  As the Second Circuit noted, "the relevant inquiry is whether particular acts of discrimination occurred while plaintiff was 'within the jurisdiction of the United States,' or whether they occurred when plaintiff was outside the jurisdiction of the United States and therefore beyond the prescribed reach of Section 1981." *Id*. at 305 (quoting 42 U.S.C. § 1981).  In the instant case, the acts of discrimination, harassment, and retaliation that form the basis of Bell's Complaint all occurred in Kuwait, and therefore, are beyond the reach of § 1981.  Accordingly, Honeywell's motion to dismiss is **GRANTED**.[2]

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss (Docket No. 9) is **GRANTED** and the Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

---

[2] Because the Court has granted the motion to dismiss on these grounds, it is not necessary to address Honeywell's alternate arguments, namely, the venue argument and the argument under *Bell Atlantic City v. Twombly*, 550 U.S. 544 (2007).

SO ORDERED:   08/12/2010

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Sara Elizabeth Hutchins
Ogletree, Deakins, Nash, Smoak & Stewart
sara.hutchins@ogletreedeakins.com

Brian L. McDermott
Ogletree, Deakins, Nash, Smoak & Stewart
brian.mcdermott@odnss.com

Gregory A. Stowers
Stowers & Weddle PC
gstowers@swh-law.com